[No. D061577. Fourth Dist., Div. One. Oct. 25, 2012.]

In re K.L., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
STACY B., Defendant and Appellant.

**COUNSEL**

Suzanne Miu Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Dana C. Shoffner and Caitlin E. Rae, Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego, Tilisha Martin, Carolyn Levenberg and Beth Ploesch for Minor.

**OPINION**

McINTYRE, J.—In this juvenile dependency case, we examine the term "nonminor dependent" as this term is used in the California Fostering Connections to Success Act (the Act). (Assem. Bill No. 12 (2009–2010 Reg. Sess.); Assem. Bill No. 212 (2011–2012 Reg. Sess.).) We conclude that the dependent child in this case did not meet the definition of a nonminor dependent and that even though she had turned 18, the juvenile court did not err when it held the 12-month permanency review hearing. (Welf. & Inst. Code, § 366.21, subd. (f); undesignated statutory references are to this code.) We also conclude that the statutory framework does not allow a parent to reunify with a dependent child who has turned 18 because a parent cannot have physical custody of an adult. Thus, the juvenile court did not err when it terminated reunification services to the mother. Accordingly, we affirm the order issued after the 12-month permanency review hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

In mid-September 2010, 17-year-old K.L. lived with her father and several other individuals. K.L.'s mother, Stacy, and brother had also lived with them, but moved out three months earlier even though Stacy believed K.L. would not be safe and had previously signed safety plans stating she should not leave K.L. alone with K.L.'s father. K.L.'s psychological functioning and intellectual development is at about the level of a nine to 11 year old. Stacy is in the low average range of cognitive functioning.

The San Diego County Health and Human Services Agency (Agency) filed a section 300, subdivision (d) petition on behalf of K.L. after an investigation revealed her father had sexually abused her and arranged for other adult males to have intercourse with her. The petition also alleged that Stacy was aware that K.L.'s father was a registered sex offender and that she left K.L. in his home despite her belief it was not safe. At the detention hearing, the juvenile court found that K.L. was a person described by section 300, subdivision (d). It provided voluntary services to the parents and ordered that they have no contact with K.L.

The juvenile court made a true finding on the petition, declared K.L. a dependent child, removed custody from the parents, ordered reunification services for Stacy, and placed K.L. with a nonrelative extended family member. In April 2011, the court ordered that K.L. be placed in a licensed foster home because her caregiver could no longer care for her. (§ 387.) At the six-month review hearing in May 2011, the juvenile court found Stacy had made substantive progress in services and granted her additional services. It also continued K.L.'s placement in out-of-home care, and granted the Agency discretion to expand Stacy's visits. In September 2011, K.L. turned 18. She remained placed in a group home and was accepted by a regional center adult family home placement agency. In a November 2011 status review report, the Agency recommended that Stacy's reunification services be terminated and K.L. be placed in a regional center foster home under another planned permanent living arrangement.

At the contested 12-month permanency review in January 2012, Stacy argued that after a dependent child turns 18, the court could continue reunification services to a parent to further the best interests of the child; however, she asserted the court did not need to make orders regarding evaluation of her progress in reunification services and probability of return because K.L. had turned 18 and she could not reunify with K.L. Stacy claimed that the court could order continued jurisdiction over K.L. to

provide K.L. with additional services without making findings as to Stacy's progress in services. The court denied Stacy's request to not make findings as to her participation in services. The court reasoned that the dependency statutory scheme permitted it to make the customary findings at the 12-month review, including whether Stacy failed to reunify, and that her argument regarding potential harm should she be involved in a further dependency case was speculative. Thereafter, it continued the review hearing.

At the continued 12-month review hearing, the court found return of K.L. to Stacy's custody would create a substantial risk of detriment. It found that Stacy had made some progress in services but there was not a substantial probability K.L. would return home by the 18-month review date the following month and terminated Stacy's services. It ordered another planned permanent living arrangement, and granted a request to change K.L.'s placement to a group home. The court reiterated that it had the authority to make review hearing findings during the time it had jurisdiction, even if the dependent child had turned 18 years old. It set a future hearing to address K.L.'s possible status as a nonminor dependent. Stacy timely appealed.

## DISCUSSION

### I. *Propriety of the Juvenile Court's Review Hearing Findings*

■ Where, as here, a parent is receiving court-mandated reunification services, the juvenile court is required to hold review hearings. (§ 366.21.) At the 12-month permanency hearing, the court must determine the permanent plan for the child, including whether the child will be returned to the child's home and to the physical custody of his or her parent. (§ 366.21, subd. (f).) The juvenile court must also determine whether reasonable services have been provided or offered to the parent or parents. (*Ibid.*)

Stacy contends that K.L. was a nonminor dependent at the time of the contested 12-month review hearing, that the juvenile court erroneously and improperly made legal findings regarding her progress in services and that such findings were improper because they were inconsistent with the legislative purpose of reunification, which was rendered impossible when K.L. turned 18. She contends that having these findings in the record may prejudice her in the future should she be involved in another dependency case.

We reject Stacy's contention that K.L. qualified as a nonminor dependent at the time of the 12-month hearing or that the juvenile court should not have

held a review hearing under section 366.21 because K.L. had turned 18. Before we can explain our conclusion, however, we must address the concept of a nonminor dependent.

Before 2008, youths in the foster care system aged out of the system when they turned 18, leading to an epidemic of emancipated youths without the skills and resources to become productive members of society. (Shin, *A Saving Grace? The Impact of the Fostering Connections to Success and Increasing Adoptions Act on America's Older Foster Youth* (2012) 9 Hastings Race & Poverty L.J. 133, 133–143 (Shin).) In 2008, the federal government enacted the Fostering Connections to Success and Increasing Adoptions Act (the Federal Act), which allowed youths in foster care to continue receiving assistance payments after they turned 18. (Shin, *supra*, at p. 144.) The Federal Act requires that states implementing its programs provide assistance and support in developing a personalized transition plan for all youths before they age out of foster care. (Shin, at p. 145.)

Effective January 1, 2012, California enacted the Act, which extended the California foster care program to age 21 in accordance with the provisions of the Federal Act. (Shin, *supra*, 9 Hastings Race & Poverty L.J. at p. 151.) Before the effective date of the Act, a juvenile court could maintain dependency jurisdiction over a child who had reached the age of majority, but had not yet reached the age of 21 years. (§ 303, subd. (a).) After the effective date of the Act, "the court shall have within its jurisdiction any nonminor dependent, as defined in subdivision (v) of Section 11400." (§ 303, subd. (b).) Thus, dependent children who would normally " 'age out' of the system" could qualify to receive assistance until they reach 19, 20, or potentially even 21 years of age. (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2012 ed.) Post-Permanency Planning Procedures, § 2.180[5][b], p. 2-534.)

A nonminor dependent is defined as "a foster child . . . who is a current dependent child or ward of the juvenile court . . . who satisfies all of the following criteria: [¶] (1) He or she has attained 18 years of age while under an order of foster care placement by the juvenile court, and is not more than 19 years of age on or after January 1, 2012 . . . . [¶] (2) He or she is in foster care under the placement and care responsibility of the county welfare department . . . . [¶] (3) He or she is participating in a transitional independent living case plan . . . as described in Section 11403." (§ 11400, subd. (v).)

A transitional independent living case plan is defined as "the nonminor dependent's case plan, updated every six months, that describes the goals and objectives of how the nonminor will make progress in the transition to living independently and assume incremental responsibility for adult decisionmaking, the collaborative efforts between the nonminor and the social worker . . .

and the supportive services as described in the transitional independent living plan (TILP) to ensure active and meaningful participation in one or more of the eligibility criteria described in subdivision (b) of Section 11403, the nonminor's appropriate supervised placement setting, and the nonminor's permanent plan for transition to living independently, which includes maintaining or obtaining permanent connections to caring and committed adults, as set forth in paragraph (16) of subdivision (f) of Section 16501.1." (§ 11400, subd. (y).)

Nonminor dependents who satisy at least one of the five conditions listed in subdivision (b) of section 11403 become eligible to receive financial support consistent with their transitional independent living case plan until they reach 19, 20, or potentially even 21 years of age. (§ 11403, subd. (a).) These conditions are "(1) The nonminor is completing secondary education or a program leading to an equivalent credential. [¶] (2) The nonminor is enrolled in an institution which provides postsecondary or vocational education. [¶] (3) The nonminor is participating in a program or activity designed to promote, or remove barriers to employment. [¶] (4) The nonminor is employed for at least 80 hours per month. [¶] (5) The nonminor is incapable of doing any of the activities described in subparagraphs (1) to (4), inclusive, due to a medical condition . . . ." (§ 11403, subd. (b).)

The Agency argues that K.L. did not qualify as a nonminor dependent at the time of the 12-month hearing because she was not yet participating in a transitional independent living case plan. We agree.

■ Subdivision (v) of section 11400 sets forth three criteria a dependent child must satisfy to be defined as a nonminor dependent. Stacy conceded that at the time of the 12-month review hearing, K.L. was not participating in a transitional independent living case plan and the juvenile court had not officially ordered a permanent plan of long-term foster care, two of the required criteria. Additionally, there is nothing in the record showing that K.L. met these two criteria. Accordingly, K.L. was not a nonminor dependent at the time of the 12-month permanency review hearing.

Stacy contends that K.L. qualified as a nonminor dependent because she was enrolled in and completing high school, one of the five defined program criteria listed in subdivision (b) of section 11403 as a prerequisite to receiving financial support. Stacy has misconstrued the statutes.

■ Subdivision (a) of section 11403 states that a nonminor dependent who satisfies one of the conditions listed in subdivision (b) of section 11403 is eligible to receive financial support consistent with the transitional independent living case plan until he or she reaches 19, 20, or potentially even 21

years of age. (§ 11403, subd. (a).) Section 11403 does not define a nonminor dependent; rather, it requires that an individual, who already satisfies the criteria to be defined as a nonminor dependent, meet one of five listed conditions to qualify for financial support.

Stacy next argues that California Rules of Court, rule 5.707 furthers her argument that there is no requirement there be an official permanent plan order and an officially executed transitional independent living case plan in place before a minor qualifies as a nonminor dependent. This rule lists the requirements that must be satisfied at the last review hearing before a child turns 18, including that the social worker prepare a report that describes "[t]he child's plans to remain under juvenile court jurisdiction as a nonminor dependent including the criteria in section 11403(b) that he or she plans to meet." (Cal. Rules of Court, rule 5.707(a)(1).) This rule is not relevant to the question whether an individual meets the definition of a nonminor dependent.

Finally, Stacy cites to various documents on the Internet describing the Act as support for her argument. However, there is no need for us to discuss these materials to ascertain the meaning of the statutes as we interpret them based on their plain language. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

Accordingly, we reject Stacy's argument that the juvenile court should not have held a review hearing under section 366.21.

## II. *Termination of Stacy's Services*

At the 12-month permanency hearing, the juvenile court found there was "not a substantial probability that [K.L.] w[ould] be return[ed]" before the 18-month review date, which was in about 33 days. The court noted that the service providers were aware of Stacy's limitations and that the services provided addressed the special needs and limitations of the family. The court expressed concern that after 56 sessions of group treatment, Stacy could not identify signs of abuse. Additionally, the court noted that Dr. Ibolya M. Kantor, Stacy and K.L.'s conjoint psychotherapist, doubted Stacy's ability to apply the knowledge she acquired to reality.

The juvenile court found that Stacy had made some progress in services, but there was not a substantial probability K.L. would return home by the 18-month review date and terminated Stacy's services. Stacy contends insufficient evidence supported the juvenile court's finding there was not a substantial probability that K.L. could be safely returned to her custody. Accordingly, she asserts the juvenile court abused its discretion in refusing to extend her services to the 18-month review.

We requested further briefing from the parties on (1) what authority allows a juvenile court to continue reunification services to the parent of a dependent child who has turned 18, and (2) whether it is possible for a parent to reunify with a dependent child who has turned 18. We have received and considered the parties' supplemental briefs. As we shall discuss, we conclude that the juvenile court properly terminated Stacy's reunification services, albeit for the wrong reason.

■ Stacy's counsel submits that she has been unable to find any authority allowing a juvenile court to continue reunification services to the parent of a dependent child who has turned 18 and asserts it is not possible for a parent to reunify with a dependent child who has turned 18. In turn, the Agency and minor's counsel admit that a dependent child over the age of 18 cannot be returned to the "care, custody and control" of a parent. Nonetheless, they submit that a parent and a dependent child who has turned 18 can "reunify through reunification services that allow the dependent child to return to the parent's home safely if both the dependent child and parent desire." The Agency and minor's counsel also argue a juvenile court can continue reunification services (1) to allow a dependent child who has turned 18 to return to the physical home of the parent if desired by the parties (§ 366.21, subds. (e), (f)), or (2) to allow the dependent child who has turned 18 and the parent to regain or resume a connection that allows the dependent child and parent to have a relationship in the future, citing sections 202, 300.2, 361, subd. (a)(1), 362, and 362.1. As we shall explain, the statutory framework does not allow a parent to reunify with a dependent child who has turned 18 because a parent cannot have physical custody of an adult.

A "dependent" is defined as "a child" described in section 300. (§ 101, subd. (e).) In turn, section 300 states that "[a]ny child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court." To become a "dependent child" subject to jurisdiction under the dependency statutes, a person must be under 18 years of age. (*In re Gloria J.* (1987) 188 Cal.App.3d 835, 838 [233 Cal.Rptr. 690]; *In re Holly H.* (2002) 104 Cal.App.4th 1324, 1330 [128 Cal.Rptr.2d 907] (*Holly H.*).) However, once a juvenile court has jurisdiction over a person, it may retain jurisdiction until the "dependent child attains the age of 21 years." (§ 303, subd. (a).) Taking these statutes together, it is clear that the terms "child," "dependent" or "dependent child" include persons subject to jurisdiction under the dependency statutes up to the age of 21 years.

The goal of dependency is to preserve the family and provide maximum safety and protection for the minor. (§ 300.2.) Services "may include provision of a full array of social and health services to help the child and family

and to prevent reabuse of children." (*Ibid.*) Accordingly, "[t]here is a presumption in dependency cases that parents will receive reunification services. [Citation.] Section 361.5, subdivision (a) directs the juvenile court to order services *whenever* a child is removed from the custody of his or her parent *unless* the case is within the enumerated exceptions in section 361.5 subdivision (b). [Citation.]" (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95 [42 Cal.Rptr.3d 504].)

The status of every dependent child in foster care must be reviewed periodically as determined by the court, but no less frequently than once every six months. (§ 366, subd. (a)(1).) At each review hearing, the court is required to determine the "extent of the agency's compliance with the case plan" in making reasonable efforts to return the child to a safe home. (§ 366, subd. (a)(1)(B).) A permanency hearing must be held no later than 12 months after the date the child entered foster care. (§ 366.21, subd. (f).) At this hearing, the court must "determine the permanent plan for the child, which shall include a determination of whether the child will be returned to the child's home and, if so, when, within the time limits of subdivision (a) of Section 361.5. The court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (f).) The court must also determine whether the parent was provided or offered reasonable services designed to aid the parent to overcome the problems that led to the initial removal and continued custody of the child. (*Ibid.*)

If the child is not returned to parental custody at the 12-month review hearing, the juvenile court has the discretion to continue the case to the 18-month review date, set a section 366.26 hearing, or order a permanent plan of long-term foster care for the child. (§ 366.21, subd. (g)(1), (2) & (3).) However, "[t]he court shall continue the case only if it finds that there is a substantial probability *that the child will be returned to the physical custody of his or her parent* . . . and safely maintained in the home within the extended period of time or that reasonable services have not been provided to the parent . . . ." (§ 366.21, subd. (g)(1), italics added.) Additionally, at the 12-month review hearing, the juvenile court has the discretion to continue court-ordered family reunification services to the 18-month review date if the court "finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period or that reasonable services have not been provided to the parent or guardian." (§ 361.5, subd. (a)(3).)

Thus, at the 12-month permanency hearing, the juvenile court can continue the case and court-ordered family reunification services to the 18-month review date only if "there is a substantial probability that the child will be returned to the physical custody of his or her parent." (§§ 366.21, subd. (g)(1), 361.5, subd. (a)(3).) Additionally, while services may be extended up to 24 months after the date of removal, the court can continue the case "only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent . . . ." (§ 366.22, subd. (b).) The Agency cited no authority to support the proposition that a dependent child over the age of 18 can be returned to the "physical custody" of a parent. Rather, the Agency conceded that a dependent child over the age of 18 cannot be returned to the "care, custody and control" of a parent. We agree that a parent cannot have "physical custody" of a dependent child who has turned 18. (§ 303, subd. (d) ["Nothing in this code . . . shall be construed to provide legal custody of a person who has attained 18 years of age to the county welfare or probation department or to otherwise abrogate any other rights that a person who has attained 18 years of age may have as an adult under California law."]; *Edwards v. Edwards* (2008) 162 Cal.App.4th 136, 143 [75 Cal.Rptr.3d 458] [an adult is not in the custody of either parent]; see *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 594 [7 Cal.Rptr.3d 701] [Under Fam. Code, § 7505, subd. (c), parental authority over a child ceases by operation of law when the child reaches the age of majority.].)

■ As we have discussed, a dependent child who has turned 18 cannot be returned to the physical custody of a parent. With this said, we do not suggest that reunification services automatically stop as soon as a dependent child turns 18 years old. Rather, as what occurred here, the dependent child turned 18 and the reunification services continued to the next review hearing date.

■ We reject the Agency's argument that a juvenile court can continue reunification services to a parent to allow a dependent child who has turned 18 to return to the physical home of a parent if desired by the parties. The authority cited by the Agency for this proposition, subdivisions (e) and (f) of section 366.21, speaks in terms of returning a child to the physical custody of a parent. Additionally, while subdivision (f) of section 366.3 allows a court to order an additional six months of reunification services to a parent "to return the child to a safe home environment," the parent must first rebut the presumption that continued care is in the best interests of the child. Stacy did not attempt to make such a showing. We similarly reject the assertion of minor's counsel that *Holly H.* supports the argument that parents may receive services until a dependent child turns 21. In *Holly H.*, the appellate court addressed the appropriate standard for terminating the dependency of a minor who turns 18 years of age under section 391. (*Holly H., supra,* 104 Cal.App.4th at p. 1330.) In this context, the court noted that under section

390, a dependency petition may be dismissed any time before the minor reaches age 21 " 'if the court finds that the interests of justice and the welfare of the minor require the dismissal, and that the parent or guardian of the minor is not in need of treatment or rehabilitation.' " (104 Cal.App.4th at p. 1330.) The *Holly H.* court did not address whether a juvenile court could continue reunification services to a parent of a dependent child who has turned 18 and section 390 does not address this issue.

The Agency contends that a juvenile court can continue reunification services to a parent to allow the dependent child who has turned 18 and the parent to regain or resume a connection that allows the dependent child and parent to have a relationship in the future, asserting that such services should be considered as "enhancement services" or "reconnection services." Minor's counsel similarly argues that continuing services to the parent of a dependent child who has turned 18 furthers the statutory goal under section 300.2 of preserving families. Stacy, however, did not request "enhancement services" or "reconnection services" below, and the issue whether she may be entitled to such services is not properly before us on appeal.

Finally, we note that K.L. turned 18 *before* the effective date of the Act. Thus, it was impossible for counsel and the court to comply with the directives in place to qualify her as a nonminor dependent before she turned 18. (See § 366.3, subds. (*l*), (n); Cal. Rules of Court, rule 5.707.) Had K.L. qualified as a nonminor dependent before the 12-month review hearing date, this would have eliminated the need to hold the 12-month review hearing under section 366.21, subdivision (f) and make the required findings. Rather, once qualified as a nonminor dependant, K.L. would be subject to status review under the requirements of section 366.3, governing postpermanency plan review hearings, until dependency jurisdiction is terminated under section 391. (§ 366, subd. (f).)

Notably, after January 1, 2013, a juvenile court will be allowed to extend reunification services to a parent and nonminor dependent where the parent and nonminor dependent agree and the court finds such services are in the best interests of the nonminor dependent and there is a substantial probability that the nonminor dependent will be able to *safely reside in the home* of the parent or guardian by the next review hearing. (§ 361.6, subd. (a), effective Jan. 1, 2013, italics added; see Assem. Bill No. 1712 (2011–2012 Reg. Sess.), available online at <http://www.leginfo.ca.gov/pub/11-12/bill/asm/ab_1701-1750/ab_1712_bill_ 20120930_chaptered.html> [as of Oct. 25, 2012].) Thus, should K.L. qualify as a nonminor dependent on remand, Stacy must make her request for additional services in the context of the Act.

## DISPOSITION

The order is affirmed.

McConnell, P. J., and McDonald, J., concurred.