Filed 5/16/13  Patrick H. v. Super. Ct. CA21/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PATRICK H., et al., <br><br>     Petitioners, <br><br> v. <br><br> SUPERIOR COURT OF MENDOCINO COUNTY, <br><br>     Respondent, <br><br> MENDOCINO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES et al. <br><br>     Real Parties in Interest. | A137339 <br><br> (Mendocino County Super. Ct. No. SCUK-JVSQ-11-16333-01) |

Patrick H. (Father) and Alicia E. (Mother) seek extraordinary relief from orders of the Mendocino County Superior Court, Juvenile Division, entered November 26, 2012, which terminated Father's reunification services at the conclusion of the 12-month permanency hearing, and set a hearing under Welfare and Institutions Code section 366.26 to select a permanent plan for their child A.H., born September 2010.[1]  Father contends the juvenile court erred in terminating his services.  Mother, whose services were previously terminated, has submitted a petition that raises no arguably meritorious issues.  We conclude substantial evidence supports the finding underlying the termination

---

[1] All further statutory references are to the Welfare and Institutions Code.

of Father's services, and deny on the merits both Father's and Mother's petitions for extraordinary writ.[2]

STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts and earlier procedural history, to the point of the six-month review hearing, are set out in detail in the Mother's prior appeal from the dispositional orders entered in December of 2011 (*In re A.H.* (Dec. 12, 2012, A134387) [nonpub. opn.]), and in Mother's second appeal—currently pending before this court—from orders entered at the conclusion of the six-month hearing in June 2012 (*In re A.H.* (A135981).) At the conclusion of the six-month review hearing on June 26, 2012, the juvenile court adhered to the determinations of the Round Valley Tribal Council, expressed in a letter to the court and resolutions, to decline to accept jurisdiction of the case and authorize alteration of preferences mandated by the Indian Child Welfare Act (ICWA) to establish a long-term guardianship of A.H. with "Talisha and Simon M.," with the "understanding that no adoption will be done." The court also adopted the findings in the six-month review report filed by the Mendocino County Health and Human Services Agency (the Agency). Family reunification services to Mother were terminated; services to Father were continued to the 12-month hearing, as were the parents' visitation rights.

In July 2012, Father temporarily separated his living arrangement from the Mother and relocated from Covelo to Ukiah. At his request his case plan was amended to specify a transfer of some of his services from Yuki Trails to Consolidated Tribal Health.

The 12-month report, filed by the Agency on October 1, 2012, indicated that the Father consistently engaged in unsupervised visitation with the child, and during the visits demonstrated appropriate parenting skills. The child exhibited a strong attachment to her Father during visitation. On one occasion, however, the child smelled of marijuana following a visit with the Father. During another visit, he engaged in a heated argument and yelled at the Mother in front of the child and others. The Father participated in a

---

[2] Section 366.26, subdivision (*l*)(1)(A), bars review on appeal if the aggrieved party has not made a timely writ challenge to an order setting a hearing under section 366.26, and encourages the appellate court to determine such writ petitions on their merits. (§ 366.26, subd. (*l*)(4)(B).)

weekly Family Empowerment Group, a parenting program, Alcoholics Anonymous meetings, Men's Anger Management classes, individual counseling through a therapist, and completed some of his Life Skills classes.

According to the report, the Father's compliance with random urine analyses by the Agency has been inconsistent, partially due to transportation problems. He did not test positive for drugs, but did not appear for testing on some occasions.

The Father improved his hygiene slightly but not satisfactorily, and submitted housing applications, although he did not obtain any form of suitable housing for the child. The report noted that in September of 2012, the Father resided with his brother – who had a lengthy history of incarcerations – and the Mother. Despite continued warnings from the Agency, the Father maintained a caretaking relationship with the Mother that was antithetical to both himself and his prospects for reunification with the child. He arranged visitation with the child for the Mother and transported her to her visits with the child. He also acknowledged that he engaged in trimming and sale of marijuana; the child's clothes "smelled like marijuana" after a visit with him on September 26, 2012.

In the report the Agency commended the Father for his regular, positive visitation with the child, and his progress in participating in reunification services, but concluded that he did not make significant progress in completing his case plan objectives or resolving problems that resulted in the child's removal from his custody. The Agency found that despite the Father's "good connection" with the child and his "good intentions," no substantial probability existed that he would reunite with her by the date of the 18-month review. Termination of his reunification services and a section 366.26 hearing were recommended.

At the conclusion of this hearing on November 26, 2012, the juvenile court found no substantial probability that the child would be returned to the physical custody of the Father within 18 months of the initial removal, terminated Father's services, and set the matter for a hearing under section 366.26. Two hours of weekly visitation were granted

3

to the Father; no further visitation was granted to the Mother.  Separate petitions filed by Mother and Father followed.  (§ 366.26, subd. (*l*).)

**DISCUSSION**

*Mother's Petition*.

The Mother's petition, while somewhat difficult to decipher,  vaguely accuses the Agency of "fraud," asserts ineffective assistance of counsel due to lack of funds, claims federal protection for her mental health disorder and drug use, discrimination and denial of her equal protection rights on the basis of her mental disorder, cruel and unusual punishment, and lack of notice.  She requests cessation of violation of her rights and the return of her child.  Upon review of the record we conclude that Mother has not offered any meritorious grounds in support of her petition.  The juvenile court's decision to terminate her reunification services and schedule a section 366.26 hearing is supported by overwhelming evidence of her failure to comply with reunification services.

*Father's Petition*.

The Father's petition challenges the juvenile court's decision to terminate his reunification services at the 12-month hearing and set a section 366.26 hearing.  He claims that he "demonstrated sufficient progress in his case plan" to warrant extension and continuation of services to the 18-month hearing.  The Father points out that he complied with nearly all the objectives of his case plan, and made sufficient progress in others – those being obtaining appropriate housing, and ending his "co-dependent behavior patterns with the mother."  He therefore argues that the juvenile court "should have continued his reunification services."

"At the 12-month permanency hearing, the court must determine the permanent plan for the child, including whether the child will be returned to the child's home and to the physical custody of his or her parent. (§ 366.21, subd. (f).)  The juvenile court must also determine whether reasonable services have been provided or offered to the parent or parents."[3]  (*In re K.L.* (2012) 210 Cal.App.4th 632, 636.)

---

[3] The father does not complain in this petition that inadequate reunification services were provided to him.

4

Subdivision (g) of section 366.21 governs dependency proceedings at 12-month review hearings; it provides, in relevant part: "If the time period in which the court-ordered services were provided has met or exceeded the time period set forth in [section 361.5, subdivision (a)] and a child is not returned to the custody of a parent or legal guardian at the permanency hearing held pursuant to subdivision (f), the court shall do one of the following: [¶] (1) Continue the case for up to six months for a permanency review hearing, provided that the hearing shall occur within 18 months of the date the child was originally taken from the physical custody of his or her parent or legal guardian. The court shall continue the case only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian . . . . For the purposes of this section, in order to find a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time, the court shall be required to find all of the following: [¶] (A) That the parent or legal guardian has consistently and regularly contacted and visited with the child. [¶] (B) That the parent or legal guardian has made significant progress in resolving problems that led to the child's removal from the home. [¶] (C) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs."[4]

Thus, during the period in the dependency that " 'runs from the 12-month review hearing to the 18-month review hearing (§ 366.22), services are available only if the juvenile court finds specifically that the parent has "consistently and regularly contacted

---

[4]  In essentially identical terms, California Rules of Court, rule 5.710 (c)(1)(D)(i) states, with respect to setting a section 366.26 hearing: "In order to find a substantial probability that the child may be returned within the applicable time period, the court should consider the following factors along with any other relevant evidence: [¶] a. Whether the parent or legal guardian has consistently and regularly contacted and visited the child; [¶] b. Whether the parent or legal guardian has made significant progress in resolving the problems that led to the removal of the child; and [¶] c. Whether the parent or legal guardian has demonstrated the capacity and ability to complete the objectives of the treatment plan and to provide for the child's safety, protection, physical and emotional health, and special needs."

and visited with the child," made "significant progress" on the problems that led to removal, and "demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(A)–(C).)' [Citation.]" (*A.H. v. Superior Court* (2010) 182 Cal.App.4th 1050, 1058.) "[A]t the 12-month permanency hearing, the juvenile court can continue the case and court-ordered family reunification services to the 18-month review date only if 'there is a substantial probability that the child will be returned to the physical custody of his or her parent.' (§§ 366.21, subd. (g)(1), 361.5, subd. (a)(3).)" (*In re K.L., supra*, 210 Cal.App.4th 632, 642.) "[M]oreover, the court must find all three of the listed factors to justify a finding of a substantial probability the child will be returned to his or her parent. (§ 366.21, subd. (g)(1).)" (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 178.)

Our review of the trial court's decision is quite constrained. "We review an order terminating reunification services to determine if it is supported by substantial evidence. [Citation.] In making this determination, we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' [Citation.]" (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688–689.) "Rather, as a reviewing court, we view the record in the light most favorable to the judgment below and ' "decide if the evidence [in support of the judgment] is reasonable, credible and of solid value—such that a reasonable trier of fact could find that termination of parental rights is appropriate based on clear and convincing evidence. [Citation.]" ' [Citations.]" (*In re Jasmon O.* (1994) 8 Cal.4th 398, 423.) As an appellate court, in the presence of substantial evidence, we do not reweigh conflicting evidence and alter a dependency court determination. (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 705.)

We agree with the Father that he consistently engaged in positive visitation with the child, and complied with some aspects of his case plan, as the Agency's report

recognized. Given our limited reviewing function, however, we find substantial evidence to support the finding at the 12-month review hearing that there was no substantial probability the child will be returned to the Father by the 18-month deadline. The Father made some, but not definitive or significant progress in resolving problems that led to the child's removal from the home. He did not demonstrate the capacity and ability both to complete the objectives of his treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs, as required by section 366.21, subdivision (g)(1), to continue services to the 18-month hearing. (*M.V. v. Superior Court, supra,* 167 Cal.App.4th 166, 177–178.) He did not obtain satisfactory housing for the child, he made minimal progress with improving his hygiene and organizational skills, and most importantly he continued his chaotic, volatile relationship with the Mother that was patently adverse to the safety and welfare interests of the child. The record justifies the Agency's recommendations and the juvenile court's findings.

## DISPOSITION

The petitions for extraordinary writ are denied on the merits and both requests for stay are denied. (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1024.) The decision is final in this court immediately. (Cal. Rules of Ct., rules 8.452(i), 8.490(b)(3).)


_____

Dondero, J.


We concur:


_____

Margulies, Acting P. J.


_____

Banke, J.


7