Filed 10/31/13  In re Tatiana H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re TATIANA H. et al., Persons Coming Under the Juvenile Court Law. | D064059 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. DONALD H., Defendant and Appellant. | (Super. Ct. No. SJ12740A-C) |


APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Donald H. appeals following the 12-month review hearing in the dependency case of his daughter, Tatiana H., and his sons, Tyler H. and Christian H. (together, the children). Donald contends the juvenile court erred by failing to extend his reunification services to the 18-month date and abused its discretion by denying him unsupervised visitation. We affirm.

BACKGROUND

Donald and the children's mother, Maria M. (together, the parents), have a history of domestic violence and drug use that began before their oldest child, Tatiana, was born in September 1999. Donald has numerous criminal convictions, most involving domestic violence. Two of his convictions are strikes (Pen. Code, § 667 subds. (b)-(i)).

Between August 2000 and June 2001, the parents received voluntary services to address their domestic violence and drug use. In April 2001, Donald was arrested for an incident of domestic violence. Tyler was born in August 2002, and Christian was born in August 2007.

Between September 2002 and June 2011, there were additional reports of domestic violence, some of which occurred in the children's presence. In June 2011, Donald was arrested and jailed. In August, Maria agreed to another voluntary services plan. In January 2012, Donald was released from jail and moved into a sober living facility. He was subject to a restraining order, and his visits with the children were supervised.

In March 2012, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions for 12-year-old Tatiana, nine-and-one-half-year-old Tyler and four-and-one-half-year-old Christian. The petitions alleged that Maria used drugs and left the children unattended. The children were detained in foster homes. In April, the court dismissed the allegations that Maria left the children unattended and entered true findings on

2

the petitions as so amended. The court found that it would be detrimental to the children to be placed with Donald and ordered the children placed in foster care with reunification services for the parents. Donald's case plan objectives included developing and using a domestic violence relapse prevention plan; expressing anger appropriately; not behaving in a verbally threatening manner; attending and demonstrating progress in domestic violence treatment; attending a parenting program; and showing empathy for the children. Later, substance abuse treatment, Narcotics Anonymous meetings and drug testing were added to Donald's case plan.

At the 12-month review hearing in May 2013, the court continued Tatiana's and Tyler's foster care placements and ordered Christian placed with Maria. The court terminated Donald's services and continued Maria's. Donald's visits remained supervised, as they had been throughout the case.[1]

SERVICES

At the 12-month review hearing, if the court does not order the child returned to the parent, the court may continue services to the 18-month date "if it finds that there is a substantial probability that the child will be returned to the [parent's] physical custody . . . and safely maintained in the home within the extended period of time . . . ." (Welf. & Inst. Code, §§ 366.21, subd. (g)(1), 361.5, subd. (a)(3);[2] *In re K.L.* (2012) 210 Cal.App.4th 632, 641-642.) This finding is proper only if the parent has "consistently and regularly contacted and visited with the child" (§ 366.21, subd. (g)(1)(A)); "made significant progress in resolving problems

---

[1] At the detention hearing, the court gave the Agency discretion to allow Donald unsupervised visits. In December 2012, the Agency exercised that discretion. Within four days, and before any unsupervised visits took place, he relapsed on drugs.

[2] All further statutory references are to the Welfare and Institutions Code.

that led to the child's removal" (*Id*., subd. (g)(1)(B)); and "demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs" (*Id*., subd. (g)(1)(C)). In the cases of Tatiana and Tyler, we apply the substantial evidence standard of review. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.) In the case of Christian, who was returned to Maria, we apply the abuse of discretion standard. (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 647, 651-652.)

Here, the court noted that Donald had "his mind made up of what he thinks needs to be done" and resisted and interrupted instead of "listening to anybody else." The court stated that Donald did not understand the children's needs and had not put into action anything that he had learned. The court concluded that Donald had not met the requirements of section 366.21, subdivision (g)(1)(B) and (C).[3]

Donald argues the sole reason for the children's removal was Maria's substance abuse. He ignores the fact that at the time the petitions were filed, he was living apart from Maria and the children and was subject to a restraining order necessitated by his violence. Furthermore, at least one of his subsequent episodes of violence occurred around the time of a methamphetamine relapse. In any event, Donald cannot now challenge the provisions of his case plan.

Before the petitions were filed and while Donald was incarcerated, he completed 18-hour courses in parenting, anger management and substance abuse. By the time of the hearing,

_____

3    The court did not expressly address the consistency and regularity of Donald's contact and visitation (§ 366.21, subd. (g)(1)(A)). Donald "was an active participant in visitation" until December 2012, but after that his visitation was less consistent.

he had attended 30 sessions of a 52-session domestic violence program. Although he had made virtually no progress, he believed he did not need to be in the program.

Donald enrolled in the 52-session domestic violence program in February 2012; was terminated from the group in March due to absences; reentered the group in July; missed some sessions; and returned to the program. In March 2013, the group leader said that Donald was "not getting better."

In March 2013, during a supervised visit at a restaurant, Donald demonstrated both his lack of progress and his inability to ensure the children's safety and well-being. He yelled and swore and pushed Tatiana, causing her to stumble. He noticed cut marks on her wrist, and told her that the "next time she wanted to kill herself to call him, and he would do it for her." Donald asked Tatiana for Maria's telephone number, saying he wanted the number "so I can meet her somewhere, so I can kill her."[4] Restaurant personnel called the police, but Donald left before the police arrived.

Tatiana was very upset and said she did not wish to have further visits with Donald. He took no responsibility for upsetting her and insisted that she should not be allowed to refuse visits. The Agency suspended Donald's visits with Tatiana pending an investigation; those visits remained suspended at the time of the hearing.

As part of the investigation, the social worker met with Donald at the Agency's office. During the meeting, Donald yelled, swore and made racial slurs, then left the office before the interview was completed. In April 2013, the court issued another restraining order protecting Maria from Donald. In May, at a second meeting with the social worker, Donald was

---

[4]    Although the Agency had asked Donald not to talk about the case or Maria during visits, he persisted in raising these subjects with Tatiana.

aggressive and demanding and yelled at and interrupted the social worker. At a third meeting one week before the hearing, Donald behaved in a similar fashion. He ignored the social worker's request to lower his voice because there were children nearby who might be frightened.

Donald's performance in substance abuse treatment was also deficient. In July 2012, he agreed to submit to a drug test, but failed to follow through because he knew the results would be positive. In December, he relapsed and was asked to leave his sober living facility. In February 2013, he entered the CRASH substance abuse treatment program. He quit within two weeks, explaining that another resident infuriated him. Donald then began the drug court program. In March, he began attending the McAlister outpatient treatment center and tested positive for methamphetamine.[5] Donald was discharged from McAlister due to nonattendance, but reenrolled within a few weeks. By the time of the hearing, he was doing well at McAlister, but his participation was deemed unsatisfactory because he produced no proof of attendance at outside self-help meetings.

Donald displayed no understanding of the effect his conduct had on others, including his own children. Tatiana suffered from depression; Tyler and Christian had behavioral problems. The court did not err by finding there was not a substantial probability of return by the 18-month date and by terminating reunification services.

## UNSUPERVISED VISITS

Donald did not object to the supervision requirement imposed at earlier hearings in the juvenile court, nor did he seek appellate review of the requirement before the instant appeal.

---

[5] This was at least the fourth relapse since the outset of the case.

At the time of the 12-month hearing, the Agency retained the discretion to allow Donald unsupervised visits, and Donald did not object to supervision then. He has thus forfeited the right to object now.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

HALLER, J.