Filed 12/31/13  M.H. v. Super. Ct. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| M.H.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU et al.,<br><br>    Real Parties in Interest. | A139900<br><br>(Contra Costa County<br>Super. Ct. No. J1200923) |

Petitioner M.H. (Father) seeks extraordinary relief from an order of the Contra Costa County Superior Court terminating his reunification services and setting a hearing under Welfare and Institutions Code[1] section 366.26 to select a permanent plan for his daughter M.H. (minor), born in November 2006.  Finding substantial evidence to support the findings challenged by Father, we deny the petition for extraordinary writ on the merits.[2]

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Section 366.26, subdivision (l)(1)(A), bars review on appeal if the aggrieved party has not made a timely writ challenge to an order setting a hearing under section 366.26, and encourages the appellate court to determine such writ petitions on their merits.  (See § 366.26, subd. (l)(4)(B).)

## FACTUAL AND PROCEDURAL BACKGROUND

Recently, we affirmed the trial court's jurisdictional findings and dispositional orders in this matter and described the factual background to that point as follows: "On June 7, 2012, the Contra Costa County Children and Family Services Bureau (Bureau) filed a juvenile dependency petition alleging that [minor], then five years of age, came within the juvenile court's jurisdiction pursuant to the provisions of Welfare and Institutions Code section 300, subdivision (d) (sexual abuse). [Fn. omitted.] The petition was supported by the allegation that the girl had been sexually abused while in Father's custody.[3] In further support of the allegation, the Bureau also stated that the child had tested positive for the sexually transmitted disease gonorrhea. [¶] The case came to the Bureau's attention on June 5, 2012, when it was reported that [minor's] maternal grandmother had taken the child to a pediatrician on June 1, 2012 due to a vaginal discharge and an abscess on her buttock. The doctor took various specimens for testing. On June 5, 2012, the lab results showed the child tested positive for gonorrhea and a staph infection. Per the doctor, the results confirmed sexual abuse. Reportedly, [minor] had stated that she slept in the bed with one of her teenage uncles, K.S., while at Father's home.[4] [¶] During the initial investigation, Father and the paternal grandmother did not seem to understand that gonorrhea is a sexually transmitted disease and that [minor] had been sexually abused. The paternal grandmother believed the infection occurred because the child 'wipes wrong and she scratches herself.' She also stated that she had spoken with K.S., who is her son, and he explained that he had given the girl a bath because she had urinated on herself. During an exam conducted by a sexual assault specialist, the child disclosed that K.S. had put her panties on the ground, kissed her on the lips, made her hold his penis, and rubbed her vagina and butt with his fingers. She also stated that it really hurt badly when he rubbed her butt. The child was taken into protective custody and placed in a foster home. [¶] On June 8, 2012, the juvenile court ordered [minor]

---

[3] [Minor's] mother was murdered in August 2011 in a shooting in Oakland.

[4] K.S. is Father's younger half-brother.

2

detained in a nonrelative placement.  Father was referred to parenting and sexual abuse education services.  The court ordered that K.S. have no contact with the child.[5]  Father was granted supervised visitation at a minimum of one hour, two times per month." (*In re M.H.* (Sept. 30, 2013, A137159) [nonpub. opn.], 2013 Lexis 7038, at pp. *1–3.)

"On September 26, 2012, the juvenile court denied Father's motion to have the section 300, subdivision (d), allegations dismissed.  The juvenile court found jurisdiction under that subdivision, concluding that the perpetrator, K.S., was a member of the child's household.  [¶] A contested dispositional hearing was held beginning on October 22, 2012.  At the conclusion of the hearing, the juvenile court declared [minor] a dependent and ordered her removed from Father's custody pending the provision of family reunification services to him." (*In re M.H., supra,* 2013 Lexis 7038, at pp. *5–6.)  As specified in the case plan approved and adopted in the juvenile court's dispositional orders, Father was required to complete individual counseling, a program of sexual abuse treatment for non-offending parents, and a parenting education program.

We pick up the procedural and factual history of the case following the dispositional hearing.  On February 13, 2013, the Bureau filed a subsequent petition pursuant to section 342, alleging failure to protect under section 300, subdivision (b) on the grounds Father's substance abuse impairs his ability to adequately supervise and care for the minor.  Specifically, the subsequent petition alleged Father abuses promethazine with codeine, marijuana and alcohol.  The Bureau learned of Father's drug use after viewing photographs on a Facebook account belonging to Father displaying photos of Father with empty prescription bottles, identified as codeine with promethazine, large quantities of cash, bottles of tequila, small bags of marijuana, and what appears to be a small scale used for measuring drugs.  The combination of promethazine and codeine is a recreational street drug popular in the hip hop community, and "because of the color and sweetness of the drink, a child could easily be attracted to the beverage."

---

[5] K.S. also tested positive for gonorrhea.

On April 17, 2013, the juvenile court entered an order dismissing the subsequent petition without prejudice, subject to the following conditions: "Father has agreed to test for drugs and alcohol for three months between now and August 2013 . . . . However, because he has a marijuana card, positive tests for marijuana will be excused for the first five weeks of testing. He is also excused from tests until his temporary employment in Santa Clara County is concluded, no longer than 21 days. Following that date, anticipated to occur within the first five weeks of testing, missed tests will be considered positive. If father tests positive for drugs or alcohol, except for THC during the first five weeks of testing, he will enter and complete a drug treatment program. . . . Father is to provide proof of employment in Santa Clara County 14 (fourteen) days from the date of this order."

Subsequently, the Bureau submitted a status review report for the six-month review hearing on May 29, 2013. In the report, the case worker states minor was recently placed with her maternal aunt and family in Solano County after her prior placement was no longer able to provide foster care services. The minor's therapist reported the minor has been adjusting to trauma caused by sexual abuse, loss of her mother and removal from her family. Further, the therapist stated the minor has been exposed to "intense domestic violence" by Father against his female friend; also the minor went into a "dissociative state" while re-enacting violent scenes of a fight she witnessed between Father and grandpa in which Father "pulled out a knife at grandpa." Also, the minor mentioned Father has a gun and that she has seen the " 'black gun' in the kitchen."

In addition, the case worker noted court-ordered random drug testing was delayed based on Father's representations he had a six-week work assignment in Santa Clara County and he could not drug test there because he did not have a car. However, Father showed minor a photo of his green car during a visit, and has been seen driving a green car around Antioch. Father told the case worker he is "on call" for work in Santa Clara County and claimed his public defender "was lying" about a definite work assignment. Also, Father reported he is homeless and no longer residing at the apartment where minor resided with her mother before her mother died. A relative reported to the case worker

4

that Father was evicted because he was conducting illegal activities at the apartment, although the report is unconfirmed. Further, the case worker stated the Bureau was concerned about Father's violent tendencies, as described by the minor in her therapy sessions.

The case worker recommended against returning the minor to Father's care, noting that whereas Father had completed a parent education class he began in June 2012, he did not contact her to discuss what he has learned about parenting or his understanding of the traumatic behaviors a child may display following sexual abuse. Father only recently began drug testing and his only test so far was positive for marijuana. Also, Father may be residing with the paternal grandmother and the uncle who sexually abused the minor, and has not demonstrated he is drug free, sober and able to meet minor's physical and emotional needs. However, the case worker recommended continuing family reunification services to Father, in the expectation Father will engage in therapeutic services, continue to drug test, and provide the Bureau with information verifying his participation in services to address the problems that resulted in dependency.

At the hearing held on May 29, 2013, the court stated it was "very troubled by what I read in this report on father's behavior," and believed "there was a fraud perpetrated on the Court and the parties" concerning Father's purported work schedule. The court informed Father that "if you have any hopes of reunifying with your child, you [had] better start complying and you [had] better start doing it right now," and stated the minor "would be at severe risk of harm in your care and custody based on what I read in this report and given the issues that presented themselves, a child who was sexually abused by a family member, and no one is coming to grips with that issue. And we've got a dad who's checked out on drugs and not participating in testing or in treatment." Also, the court struck a recommendation that the Bureau "may authorize consecutive overnight visits" with Father, and asked if there was "any objection to the Court adopting the recommendations as stated." After none of the parties lodged an objection, the court adopted the Bureau's recommendations as modified and scheduled the matter for the 12-month review.

5

The Bureau's 12-month status review report requested that the court terminate family reunification services to Father and set a section 366.26 hearing on behalf of the minor. The report states Father completed the parent education course required under the case plan. Father only recently began to drug test and the tests for April 29 and May 6 were both positive for marijuana. Father failed to appear for drug testing on June 4, 12, 17 and 28. The report states the Bureau was unaware whether Father continues to be homeless and is concerned he may be residing in the same household as the minor's sexually-abusive uncle. Also, Father was recently involved in a shooting and sustained two bullet wounds to the leg, although he claims he was an innocent party to the shooting. Father expressed to the case worker that he would like the minor to reside with her maternal family and understands that he is unable to meet the minor's emotional, educational and physical needs at this time.

At the hearing held on September 23, 2013, the Bureau's 12-month review report was received into evidence without objection and no other evidence was presented. Counsel for Father objected to the recommendation to terminate services, stating Father "has had a lot of difficult issues," including homelessness and the recovering from gunshot wounds; counsel argued the court should "continue to give [Father] an opportunity to reunify in light of his hardships." The court disagreed, stating the case had been ongoing for 16 months without any evidence Father "has engaged in any meaningful participation in his case plan." The court noted Father failed to enroll "in a treatment program relating to the sexual abuse of his child," and failed to participate in individual counseling and drug testing. Thereafter, the court ordered termination of family reunification services for Father and set a hearing pursuant to section 366.21 for January 16, 2014. This writ proceeding followed.

DISCUSSION

Father contends that the juvenile court's order terminating reunification services is not supported by substantial evidence.[6] He further contends the court erred in denying his request to extend reunification services for another six months to the 18-month review date. Neither contention is persuasive.

"At the 12–month permanency hearing, the court must determine the permanent plan for the child, including whether the child will be returned to the child's home and to the physical custody of his or her parent. (§ 366.21, subd. (f).) The juvenile court must also determine whether reasonable services have been provided or offered to the parent or parents."[7] (*In re K.L.* (2012) 210 Cal.App.4th 632, 636.)

Subdivision (g) of section 366.21 governs dependency proceedings at 12–month review hearings; it provides, in relevant part: "If the time period in which the court-ordered services were provided has met or exceeded the time period set forth in [section 361.5, subdivision (a)] and a child is not returned to the custody of a parent or legal guardian at the permanency hearing held pursuant to subdivision (f), the court shall do one of the following: [¶] (1) Continue the case for up to six months for a permanency review hearing, provided that the hearing shall occur within 18 months of the date the child was originally taken from the physical custody of his or her parent or legal guardian. The court shall continue the case only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or

---

[6] Father also contends the juvenile court erred by failing to adopt the Bureau's unopposed recommendation to extend Father's reunification services for an additional six months in its order of May 29, 2013. Preliminarily, Father's contention is not cognizable in this writ proceeding because the order of May 29 was entered after the dispositional hearing, therefore, it was appealable as an order after judgment and Father did not file a notice of appeal within 60 days of the date of the order. (See *In re Daniel K.* (1998) 61 Cal.App.4th 661, 666–667.) Moreover, Father's contention is not supported by the record, which shows Father continued to receive reunification services after the May 29 hearing until services were terminated after the 12-month status review hearing on September 23, 2013.

[7] Father does not complain in this petition that inadequate reunification services were provided to him.

legal guardian . . . . For the purposes of this section, in order to find a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time, the court shall be required to find all of the following: [¶] (A) That the parent or legal guardian has consistently and regularly contacted and visited with the child. [¶] (B) That the parent or legal guardian has made significant progress in resolving problems that led to the child's removal from the home. [¶] (C) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs."

Thus, during the period in the dependency that " 'runs from the 12–month review hearing to the 18–month review hearing (§ 366.22), services are available only if the juvenile court finds specifically that the parent has "consistently and regularly contacted and visited with the child," made "significant progress" on the problems that led to removal, and "demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(A)–(C).)' [Citation.]" (*A.H. v. Superior Court* (2010) 182 Cal.App.4th 1050, 1058.) "[A]t the 12–month permanency hearing, the juvenile court can continue the case and court-ordered family reunification services to the 18–month review date only if 'there is a substantial probability that the child will be returned to the physical custody of his or her parent.' (§§ 366.21, subd. (g)(1), 361.5, subd. (a)(3).)" (*In re K.L., supra,* 210 Cal.App.4th at p. 642.) "[M]oreover, the court must find all three of the listed factors to justify a finding of a substantial probability the child will be returned to his or her parent. (§ 366.21, subd. (g)(1).)" (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 178.)

Furthermore, our review of the juvenile court's decision is quite constrained. "We review an order terminating reunification services to determine if it is supported by substantial evidence. [Citation.] In making this determination, we review the record in the light most favorable to the court's determinations and draw all reasonable inferences

8

from the evidence to support the findings and orders.  [Citation.]  'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.'  [Citation.]"  (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688–689.)  Substantial evidence is "reasonable, credible evidence of solid value such that a reasonable trier of fact could make the findings challenged . . . ."  (*In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401.)

Given our limited reviewing function, we find substantial evidence to support the finding at the 12–month review hearing that there was no substantial probability the child will be returned to Father by the 18–month deadline.  Whereas the Bureau acknowledged Father engaged in some aspects of his case plan and completed a parent education course, Father did not make definitive or significant progress in resolving problems that led to the child's removal from the home, nor did he demonstrate the capacity and ability both to complete the objectives of his treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs, as required by section 366.21, subdivision (g)(1), to continue services to the 18–month hearing.  (*M.V. v. Superior Court, supra,* 167 Cal.App.4th at pp. 177–178.)  In this regard, Father was homeless and did not have satisfactory housing for the child.  Father failed to comply with regular drug testing as mandated by the court as a condition for dismissing the subsequent petition filed pursuant to section 342, and failed to complete individual counseling as required under the case plan.  Most importantly, Father did not enroll in and complete a program of sexual abuse treatment for non-offending parents, reflecting a wholesale failure on his part to address the issues arising from the shocking sexual abuse of his five-year-old daughter by his younger brother that led to these dependency proceedings.[8]

---

[8] Father contends that the injuries he sustained as a result of two gunshot wounds impeded his ability to actively participate in the sexual abuse treatment program for non-offending parents.  However, the court specified that Father engage in a sexual abuse treatment program in its dispositional orders issued in November 2012, long before Father was shot.  Also, Father presented no evidence whatsoever at the 12-month review

In sum, the record amply supports the juvenile court's decision to terminate reunification services at the 12-month stage of the dependency proceeding.

---

hearing about how his medical condition purportedly impacted his ability to comply with the case plan.

## DISPOSITION

The petition for extraordinary writ is denied on the merits and the request for stay is denied.  (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1024.)  The decision is final in this court immediately.  (Cal. Rules of Court, rules 8.452(i), 8.490(b)(3).)


_____
Becton, J.*


We concur:


_____
Dondero, Acting P.J.


_____
Banke, J.


* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.