Filed 12/10/25  In re Alexis L. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ALEXIS L., et al., Persons Coming Under the Juvenile Court Law. | B339317<br><br>(Los Angeles County Super. Ct. No. 24CCJP00277A-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>NEOMI V.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Juvenile Court Referee. Conditionally reversed with directions.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Neomi V. appeals from the juvenile court's jurisdiction findings and disposition orders declaring her four children dependent children of the court under Welfare and Institutions Code section 300, subdivisions (a), (b)(1), and (j).[1] Neomi argues the Los Angeles County Department of Children and Family Services and the court failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law. First, she contends the Department failed to contact extended family members of the children's fathers to inquire about their possible Indian ancestry. That part of her appeal is moot. Second, she contends certain notices sent to the Pascua Yaqui tribe did not include information about the children's maternal great-grandmother. We agree those notices were deficient and conditionally reverse the findings and orders and remand with directions to the court to ensure the Department complies with ICWA and related California law.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Department Detains the Children, Files a Petition on Their Behalf, and Inquires About Their Indian Ancestry*

Neomi has three children with Edgar N.: Nathan N. (now 16 years old), Edgar N., Jr. (now 14 years old), and Michael N. (now 13 years old). Neomi has an older daughter (now 18 years old), Alexis L., whose father is Anthony L.[2] In January 2024 the Department detained the children and filed a petition with counts under section 300, subdivisions (a), (b)(1), and (j) alleging Neomi and her male companion had a history of domestic violence in the presence of Alexis; Neomi had a history of substance abuse and was a current abuser of methamphetamine; Neomi created a detrimental and dangerous home environment by permitting her male companion to live in the home, even though she knew or should have known he had a history of substance abuse, was a current abuser of methamphetamine and other substances, and was under the influence of such substances in the children's presence; Neomi failed to make appropriate plans for the children's safety and well-being; Neomi medically neglected Edgar, Jr. and Nathan, including by failing to take them to a doctor for treatment and failing to provide necessary

---

[2] The juvenile court may "retain jurisdiction over any person who is found to be a dependent child of the juvenile court" before that person turns 18 "until the ward or dependent child attains the age of 21 years." (§ 303, subd. (a); see *In re David B.* (2017) 12 Cal.App.5th 633, 645, disapproved on another ground in *In re D.P.* (2023) 14 Cal.5th 266, 283; *In re D.R.* (2007) 155 Cal.App.4th 480, 486.) The court's jurisdiction findings concerning Alexis pre-date her 18th birthday.

medical equipment; and Neomi created an unsanitary and hazardous home environment by failing to provide a clean home and to have sufficient food. The Department alleged these conditions endangered the children's physical health and safety and placed the children at risk of serious physical harm.

Neomi informed the Department that she believed she had Native American ancestry and that maternal relatives were registered members of the Yaqui tribe. The Parental Notification of Indian Status form (ICWA-020 form) Neomi filed identified the children's maternal great-grandmother Rita M. as a member of the Yaqui tribe from Arizona.[3] At a hearing in January 2024 Neomi said she did not know if the children's maternal grandmother was alive or how to contact her to find out more information about her family's ancestry. Neomi also said the children had two maternal great-uncles who were registered with the tribe, but one of them was deceased. Neomi said she kept in touch with the other great-uncle on social media, and the court asked Neomi to inquire about his birth date and provide it to the case social worker. The court found there was reason to believe the children were Indian children and ordered the Department to investigate the children's Indian ancestry.

In February 2024 the children's other maternal great-grandmother told a case social worker that Neomi had mentioned Rita may have been affiliated with a tribe, but she did not know

---

[3] The ICWA-020 form asks for the "Name and relationship of ancestor(s)" to the person completing the form, in this case, Neomi. Neomi identified Rita as "MGGM Rita [M.]." It appears from other statements in the record, however, that Rita was Neomi's maternal grandmother and the children's maternal great-grandmother, and the parties refer to Rita as the children's maternal great-grandmother.

4

which tribe and did not know any maternal family members to ask.  Other relatives of Neomi gave the Department similar information.  Neomi told a case social worker that the maternal great-uncle John was registered with the Pascua Yaqui tribe but had died six years earlier and that she had no contact information for the other great-uncle (despite her earlier representation about communicating with him on social media), who she said did not register with the tribe.  Neomi also said the children's maternal grandmother was not registered with the tribe, and Neomi provided the case social worker with the name and phone number of her mother's sister.  The case social worker called the children's maternal great-aunt and left a message, but the maternal great-aunt did not return the call.

Regarding the children's fathers, in February 2024 the Department contacted Edgar, who lived in Mexico, and he denied Indian ancestry.  The children's paternal aunt and great-grandmother also denied Indian ancestry.  A Department investigator also spoke with the children's paternal grandmother (who lived in Mexico), but there is no indication in the record the investigator asked her about the family's Indian ancestry.

Neomi did not have contact information for Anthony.  The Department eventually contacted him in May 2024, and he denied Indian ancestry.  Nothing in the record indicates the Department contacted Anthony's relatives to inquire about his family's possibly Indian ancestry.

B.      *The Department Notifies the Pascua Yaqui Tribe the Children May Be Eligible for Membership in the Tribe*

In March 2024 the Department sent the Pascua Yaqui tribe two notices of child custody proceedings using Judicial Council

5

form ICWA-030 (ICWA-030 form), one for Alexis's case and the other for the case involving Nathan, Edgar, Jr., and Michael, although both forms identified all four children as the subjects of a child custody proceeding.[4]  The notice for Alexis included information regarding Neomi's family, including Rita, and stated Rita was affiliated with the Pascua Yaqui tribe.  The notice for Nathan, Edgar, Jr., and Michael omitted the page of the form identifying Rita and her affiliation with the tribe.  In May 2024 the Pascua Yaqui tribe stated in a single letter it had "completed a preliminary enrollment check" for the children's families and determined none of the children was a member of the Pascua Yaqui tribe or eligible for enrollment.

C.    *The Juvenile Court Sustains the Petition, Declares the Children Dependent Children of the Court, and Finds No Reason To Believe the Children Are Indian Children; Neomi Appeals*

In May 2024 the juvenile court sustained all counts alleged in the petition, declared the children dependent children of the court, removed the children from their parents, and ordered suitable placements and reunification services.  Citing the letter from the Pascua Yaqui tribe stating the children were not eligible for membership in the tribe, the court found it had no reason to believe or know the children were Indian Children under ICWA. Neomi timely appealed, challenging only the court's ICWA findings.

---

[4]    Section 1 on the first page of the ICWA-030 form gives notice a child custody proceeding has been initiated for the children listed in that section.

6

**DISCUSSION**

A.    *Applicable Law and Standard of Review*

Congress enacted ICWA "in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128 (*Dezi C.*); see *In re Claudia R.* (2025) 115 Cal.App.5th 76, 84 (*Claudia R.*).)  "To address this concern, 'ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards.' [Citation.]  In 2006 the California Legislature passed Senate Bill No. 678 (2005-2006 Reg. Sess.), which mandated compliance with ICWA in all Indian child custody proceedings in an effort to increase compliance with ICWA." (*Claudia R.*, at p. 84; see *Dezi C.*, at pp. 1128, 1130-1131.)

In dependency proceedings ICWA and related California law require that, "where the court knows or has reason to know an Indian child is involved, notice must be given to the relevant tribes.  [Citations.]  The notice requirement is at the heart of ICWA because it 'enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding.'" (*Claudia R.*, *supra*, 115 Cal.App.5th at p. 84; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1); see also *Dezi C., supra*, 16 Cal.5th at p. 1144, fn. 15.)

7

"The juvenile court and child welfare agency 'have "an affirmative and continuing duty" in every dependency proceeding to determine whether ICWA applies by inquiring whether a child *is or may be* an Indian child.' [Citations.] The duty to inquire begins with the initial contact with the reporting party, and it continues with the child welfare agency's 'first contact with the child and each family member, including extended family members.' [Citations.] The duty of inquiry continues throughout the dependency proceedings." (*Claudia R.*, *supra*, 115 Cal.App.5th at p. 84; see § 224.2, subds. (a), (b)(1); *Dezi C.*, *supra*, 16 Cal.5th at pp. 1131-1132; Cal. Rules of Court, rule 5.481(a).)

"Under section 224.2, subdivision (b)(2), once a child is placed into the temporary custody of a 'county welfare department,' the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*Claudia R.*, *supra*, 115 Cal.App.5th at pp. 84-85; see *Dezi C.*, *supra*, 16 Cal.5th at p. 1132; Cal. Rules of Court, rule 5.481(a)(1).) Under ICWA and related California law, an "'extended family member,' if not defined by the law or custom of the child's Indian tribe, includes 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.'" (*Claudia R.*, at p. 85; see 25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"The duty of further inquiry is triggered under section 224.2, subdivision (e), '[i]f the court, social worker, or

probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child.'" (*Claudia R.*, *supra*, 115 Cal.App.5th at p. 85; see *Dezi C., supra*, 16 Cal.5th at p. 1132; Cal. Rules of Court, rule 5.481(a)(4).) "Further inquiry includes '(1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe.'" (*Claudia R.*, at p. 85; see § 224.2, subd. (e)(2)(A)-(C); *Dezi C.*, at pp. 1132-1133.) "We review the juvenile court's factual finding that ICWA does not apply for substantial evidence." (*Claudia R.*, at p. 85; see § 224.2, subd. (i)(2).)

### B.   *The Juvenile Court Already Ordered Some of the Relief Neomi Seeks, Mooting Part of Her Appeal*

A court has the duty "'"to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'" (*In re D.P.* (2023) 14 Cal.5th 266, 276.) On appeal, "[t]he critical factor in assessing mootness is whether the appellate court can provide any effective relief if it finds reversible error or if the purported error affects the outcome of subsequent proceedings." (*In re M.F.* (2022) 74 Cal.App.5th 86, 111; see *D.P.*, at p. 276.)

Neomi argues the Department and the juvenile court failed to comply with the duty of inquiry under ICWA and related

9

California law by neglecting to contact the children's paternal extended family members to inquire about the children's possible Indian ancestry. While this appeal was pending, however, the juvenile court ordered the Department to comply with section 224.2 by identifying and interviewing extended family members of the children's fathers.[5] The court's orders also required the Department to document its efforts and submit a report, after which the court will make a new finding whether ICWA applies.

In *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, a case in a similar procedural posture, the court held "all we could order in resolving this appeal is that the Department and juvenile court fulfill their inquiry and notice obligations under ICWA and related California law. Because that is what the Department is already doing, and because we are not in a position to micromanage that process in *this* appeal (detailing, for instance, all those who must be interviewed, what they must be asked, and what must be included in any notice to tribes that is required), there is no effective relief we can now provide. The juvenile court must direct that process, at least in the first instance. This appeal is moot." (*Id.* at pp. 638-639; see *In re S.H.* (2022) 82 Cal.App.5th 166, 179 ["So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry," "disturbing an early order in a dependency proceeding is not required where, as here, the court, counsel, and the Agency are aware of incomplete ICWA inquiry."].)

In her reply brief Neomi acknowledges her appeal "may have provided either direction or impetus that is allowing further

---

[5] The Department's request for judicial notice of the juvenile court's post-appeal orders dated August 5, 2025 is granted.

attempts by the Department to comply with [ICWA and related California law] while juvenile dependency proceedings continue," and she does not request additional relief. Thus, to the extent Neomi asks us to direct the juvenile court and the Department to comply with ICWA and related California law by contacting extended family members of the children's fathers to inquire about the children's possible Indian ancestry, the juvenile court is already doing that. Therefore, the appeal concerning the Department's inquiry into the children's Indian ancestry on the children's paternal side of the family is moot.

C. *Substantial Evidence Did Not Support the Juvenile Court's ICWA Findings*

Neomi also argues the notices sent to the Pascua Yaqui tribe created "ambiguity" that undermined the juvenile court's finding the court had no reason to know the children are Indian Children. Neomi argues: "It is not entirely clear which notice the [Pascua] Yaqui tribe relied on, or whether it relied on both notices." Indeed, both ICWA-030 forms listed all four children in the section identifying the children involved in the relevant child custody proceeding, and the letter sent by the tribe also referred to all four children. Thus, the tribe could have reviewed only the ICWA-030 form for Nathan, Edgar, Jr., and Michael (which omitted the page that should have identified Rita and her possible tribal affiliation) and concluded, as the tribe did, none of the children was eligible for enrollment in the tribe. As a result, the court's finding ICWA does not apply was speculative and not supported by substantial evidence. (See *In re Gilberto G.* (2024) 105 Cal.App.5th 52, 62 [inferences resulting from mere speculation or conjecture cannot support a finding]; *In re B.D.*

11

(2024) 103 Cal.App.5th 315, 329 ["substantial evidence requires more than speculation or conjecture"].)

The Department argues any errors in the notices to the Pascua Yaqui tribe were harmless because "formal notice in this case was not required" under section 224.2, subdivision (d). That statute requires the Department to send a notice including the information listed in the ICWA-030 form to the tribe where there is "reason to know" a child involved in a proceeding is an Indian child. (See §§ 224.2, subd. (d); 224.3, subd. (a).) Where, as here, the juvenile court finds under subdivision 224.2, subdivision (e), it has "reason to believe" an Indian child was involved in the proceeding, the Department must merely "[c]ontact" the tribe and "shar[e] information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C); see *Dezi C., supra,* 16 Cal.5th at p. 1133 ["The sharing of information with tribes at this inquiry stage is distinct from formal ICWA notice, which requires a 'reason to know.'"].) The Department thus argues that, because it was not required to send an ICWA-030 form, any errors in the forms it sent were harmless.

As with the duty to inquire triggered by a "reason to know" finding under section 224.2, subdivision (d), however, the Department cannot discharge its duty of further inquiry under section 224.2, subdivision (e), by sending incomplete or incorrect information to a tribe. (Cf. *Dezi C., supra,* 16 Cal.5th at p. 1136 ["'[U]ntil an agency conducts a proper initial inquiry . . . , it is impossible to know what the inquiry might reveal.'"].) And when an "error result[s] in an inadequate initial Cal-ICWA inquiry, . . . it is impossible to ascertain whether the agency's error is

12

prejudicial." (*Ibid.*; see *In re J.C.* (2022) 77 Cal.App.5th 70, 80-81 [where "the Department's failure to conduct an adequate inquiry makes it impossible for the parent to show prejudice, we must remand for a proper inquiry"].)

Thus, we conditionally reverse the juvenile court's jurisdiction findings and disposition orders. (See *Dezi C.*, *supra*, 16 Cal.5th at p. 1132 [conditional reversal with directions for the child protective agency to comply with ICWA and related California law is appropriate where the only error is the failure to conduct an adequate inquiry into a child's Indian ancestry].) On remand, the juvenile court must require the Department to send new notices to the Pascua Yaqui tribe that include all relevant information. After receiving the tribe's responses, the court must hold a new hearing to determine whether, in light of those responses and the information acquired from the Department's additional inquiry efforts, ICWA applies. (See *In re T.R.* (2024) 107 Cal.App.5th 206, 220; see also *Dezi C.,* at pp. 1137-1138.)[6]

---

[6] Neomi also argues the juvenile court should not have based its ICWA finding on the tribe's letter stating it completed only a "preliminary enrollment check." We do not reach this issue because the Department must renotify the tribe the children are subjects of child custody proceedings under ICWA.

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are conditionally reversed.  The juvenile court is directed to ensure the Department complies fully with the inquiry and notice provisions of ICWA and related California law.


                                SEGAL, J.
We concur:



                MARTINEZ, P. J.



                FEUER, J.

14