Filed 10/6/21  In re J.D. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN and FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.D.,<br><br>        Defendant and Appellant. | A161418<br><br><br>(Contra Costa County Super. Ct. No. J1900524) |

A.D. (father) appeals from an October 7, 2020 juvenile court order that summarily denied his Welfare and Institutions Code[1] section 388 petition for six months of reunification services and in-person visits with his son J.D. The sole contention on appeal is that the section 388 petition contained sufficient prima facie evidence to warrant an evidentiary hearing.  The appeal is dismissed as it has been rendered moot due to subsequent proceedings in the juvenile court.

---

[1]     All undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2019, respondent Contra Costa County Children and Family Services Bureau (the agency) removed then six-year-old J.D. from the care of his parents, who co-parented the child along with the child's paternal cousins; mother is the legal guardian of the cousins, two brothers then aged six and twelve. All of the children lived primarily with father and on weekends J.D. stayed (and the cousins periodically stayed) with mother. The agency's section 300 petition alleged both parents had put J.D. at substantial risk of physical harm and neglect. The allegations were based on father's use of corporal punishment to discipline the cousins, causing physical injuries, and on mother's acquiescence to J.D. living with father while he inflicted such corporal punishment. Following the agency's intervention, father was incarcerated on felony charges for aggravated mayhem, torture, and child cruelty based on his physical abuse of the cousins.

On August 22, 2019, the juvenile court sustained the petition, finding J.D. a person described in section 300, subdivision (b) (failure to protect) and finding true the allegations as to both parents. At the dispositional hearing on October 16, 2019, the juvenile court declared J.D. a dependent of the court after finding, by clear and convincing evidence, that the child's physical or emotional well-being was or would be in substantial danger if returned to his parents' physical custody. The juvenile court granted mother reunification services including supervised visits but denied the same to father.

The court ruled that, pursuant to section 361.5(b)(10), father would not be granted reunification services because there was clear and convincing evidence that in a prior dependency concerning J.D.'s older paternal half-sibling father had failed to reunify with that child after being offered reunification services to address his physical abuse of that child, and father

2

had not subsequently made a reasonable effort to treat the problem that led to removal of the half-sibling from his care. The court also ruled father would not be allowed to contact or visit J.D. as such contact and visits would be detrimental to the child.

In April 2020 father's criminal charges were resolved when he was placed on formal probation for five years. He was later released from custody on September 1, 2020. By that time, mother had made significant progress in reunifying with J.D.; she had completed her case plan and continued to participate in services. Her supervised visits with J.D. had progressed to unsupervised visits, with the court allowing a trial unsupervised 30-day consecutive overnight visit, later extended for an additional 60 days.

On September 21, 2020, while the child was on the unsupervised extended overnight visit with mother, father filed a Judicial Council form section 388 petition, verified only by his counsel, requesting the court to grant father six months of reunification services and in-person visits with J.D. In describing what had happened since the denial of reunification services that "might change the judge's mind," trial counsel stated: "Father is out of custody and has taken responsibility for his actions. While in custody, he completed a Triple P positive parenting class, an anger management class, and took domestic violence classes through the Deuce program. [He] is remorseful and recognizes he need[s] help raising his son and his nephews." In explaining why the proposed change of order "would . . . be better" for J.D., trial counsel stated: "Father and [J.D.] have a close bond. Father was the primary caregiver for [J.D.]. Father taught [J.D.] how to read, write, and ride his bike. Father and [J.D.] enjoy playing basketball and video games together. Father is willing to participate in any an[d] all services the Court orders including, continuing parenting classes and therapy. Father would

3

like the Court to know he loves [J.D.] more than anything and will do anything for him." On October 7, 2020, the court summarily denied father's section 388 request because: (1) the petition did not state new evidence or a change of circumstances; and (2) the proposed change of order would not promote the child's best interest.

At the 18-month review held on November 5, 2020, the juvenile court returned J.D. to the physical custody of his mother and directed the agency to provide family maintenance services. Father could not have any in-person visits but could send letters to the child through the social worker and subject to an initial review by the child's therapist. That same day, father timely appealed the October 7, 2020 order now under review.

Thereafter, and while this appeal was pending, the juvenile court held further proceedings in the dependency, of which we now take judicial notice.[2] On April 29, 2021, following a family maintenance review hearing, the juvenile court adopted, over father's objection, the agency's findings and recommendations: (1) the court found, by clear and convincing evidence, that J.D.'s return to father's custody would create a substantial risk of detriment to the child's safety, protection or physical or emotional well-being; (2) it found father's contact or visits would be detrimental to J.D.; (3) it granted

---

[2] By our order of July 22, 2021, we deferred consideration of the agency's request for judicial notice of certain documents filed in the juvenile court since the October 7, 2020 order, including an April 29, 2021 custody order and final judgment (one document), as well as the juvenile court's register of actions, and we allowed father to file his response to the request at the same time as his reply brief. We grant the agency's unopposed request to take judicial notice of the submitted juvenile court records. (Evid. Code, § 452, subd. (d) ["[j]udicial notice may be taken of . . . [¶] . . . [¶] [r]ecords of . . . any court of this state . . . ."]; see *In re Karen G.* (2004) 121 Cal.App.4th 1388, 1390 ["[i]t is not uncommon for an appellate court to take judicial notice of subsequent proceedings in the juvenile court and find the appeal has been rendered moot;" "[t]hat is the case here"].)

4

mother sole physical and legal custody of J.D.; (4) it ordered that father have no contact or visitation with J.D.; and (5) it vacated the dependency and dismissed the petition as J.D. was no longer a person described in section 300, subdivision (b). The court also filed a Judicial Council form custody order and final judgment (one document), which included its custody and visitation orders, and specifically informed the parties that the juvenile court had terminated jurisdiction over J.D. and "[a]ll requests for modification or termination" of the juvenile court orders "must be brought in the family court case" in which the juvenile court orders were filed. Father filed no appeal from the Judicial Council form custody order and final judgment, which has been re-filed and assigned a case number in Family Court.

## DISCUSSION

It is well settled that an order or judgment "terminating juvenile court jurisdiction generally renders an appeal from an earlier order moot. . . . '[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.' " (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163 (*Rashad D.*).)

On appeal, father's sole contention is that the juvenile court should have held an evidentiary hearing on his section 388 petition. However, there is no effective relief available even if there were merit to his contention. Absent reversal of the final judgment "terminating [the] dependency, the juvenile court has no jurisdiction to conduct further hearings in the now-closed case." (*Rashad D.*, *supra*, 63 Cal.App.5th at p. 164.) Because father has not appealed the final judgment, it is "not now before us or otherwise subject to appellate review. And because the juvenile court terminated its jurisdiction over [J.D.] and that termination is final, a remand for further proceedings in the juvenile court would be meaningless." (*Id.* at pp. 164-165.)

5

While we may consider moot issues, no exception to the mootness doctrine requires our review of the juvenile court's fact-driven discretionary decision to summarily deny father's section 388 petition. (See *In re David B.* (2017) 12 Cal.App.5th 633, 654 [because the juvenile court could no longer assert jurisdiction over [David B.] thus rendering the appeal moot, appellate court declined to exercise its discretion "to address the fact-specific questions whether [David B.] was described by section 300, and whether the juvenile court's determination on that point is supported by substantial evidence"].)

We note the dismissal of the appeal does not leave father without a remedy. Like the situation where a parent seeks section 388 relief to modify an order during a dependency (*In re J.M.* (2020) 50 Cal.App.5th 833, 845-846), any custody or visitation order issued at the time the juvenile court terminates its jurisdiction may be modified in a Family Court proceeding (Fam. Code, § 3021) "if [a parent] can demonstrate 'there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child' [(Wel. & Inst. Code, § 302, subd. (d)).]" (*In re Rashad D.*, *supra*, 65 Cal.App.5th at p. 165, fn. 7.)

## DISPOSITION

The appeal is dismissed.

 

_____

Petrou, J.

WE CONCUR:

_____

Tucher, P.J.

_____

Chou, J.*

<hr>

*       Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.