Filed 7/28/22  In re K.P. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re K.P., a Person Coming Under the Juvenile Court Law. | |
| | D079785 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J520760) |
| Plaintiff and Respondent, | |
| v. | |
| K.R. et al., | |
| Defendants and Appellants. | |

APPEALS from an order of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Dismissed.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant K.P.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant K.R.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Senior Deputy County Counsel, for Plaintiff and Respondent.

K.R. (Mother) appeals from the juvenile court's order[1] sustaining the petition of the San Diego County Health and Human Services Agency (Agency) under Welfare and Institutions Code section 300, subdivision (b) and assuming jurisdiction over her minor child, K.P.[2] Mother contends there was no substantial evidence to support the true jurisdictional finding. Both Mother and K.P. also appeal from the juvenile court's dispositional order declaring K.P. a dependent of the juvenile court and ordering family maintenance services. Mother and K.P. contend that the juvenile court should have instead ordered informal supervision under section 360, subdivision (b). The Agency disagrees, but primarily contends that because the court subsequently terminated its jurisdiction, the appeals are moot. Minor agrees that her appeal is moot. Mother, however, contends that we should exercise our discretion to resolve Mother's appeal. We agree with the Agency and dismiss the appeals as moot.

PROCEDURAL AND FACTUAL BACKGROUND

On May 17, 2021, seven-month-old K.P. was admitted to the hospital, where a CT scan revealed a brain bleed; an MRI showed chronic and acute brain hemorrhaging; and a skeletal survey showed a fractured left arm that was approximately three to four weeks old. On June 4, 2021, the Agency filed a petition in which it outlined these injuries and alleged under section 300,

---

1    After the contested jurisdiction and disposition hearing—which took place on both October 15, 2021 and October 22, 2021—the juvenile court issued its jurisdictional finding and dispositional order at the conclusion of the October 22, 2021 hearing. Therefore, we use the singular term, "order," throughout.

2    Undesignated statutory references are to the Welfare and Institutions Code.

2

subdivision (b) that they were "of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of the parents or other person having care or custody of the child" under section 355.1.  The Agency further alleged there was a "substantial risk that the child [would] suffer serious physical harm or illness."

The Agency's detention report indicated that a referral was made through the Child Abuse Hotline due to K.P.'s injuries discovered on May 17, 2021.  The report described these injuries as "unexplained" and "non-accidental."  In the report, the Agency indicated its concern that without court intervention, K.P. would continue to endure additional nonaccidental injuries that could possibly result in further harm and/or death.  The report explained that the injuries were extreme in nature with no plausible explanation by K.P.'s parents, and that according to a child abuse medical expert, K.P. could not have inflicted the injuries on herself.  The report stated that how K.P. sustained her injuries and who caused them remained unclear but that if future information suggested either parent's involvement, then the Agency would recommend out-of-home care.

At the June 8, 2021 detention hearing, the court found the Agency had made a prima facie showing that K.P. was a child described by section 300, subdivision (b).  The court ordered that K.P. remain in her parents' custody with the condition that her paternal grandparents remain in the home and supervise the parents' interactions with K.P.

The Agency's jurisdiction/disposition and addendum reports in late June 2021 provided additional information about K.P. and her improving medical conditions; the medical providers' conflicting opinions about the brain hemorrhages; the parents' backgrounds and the events surrounding the date K.P.'s injuries were diagnosed; K.P.'s father's interviews about having

3

previously shaken K.P. and having aggressively picked her up in moments of frustration; and the parents' participation in services. The Agency recommended that the court make a true jurisdictional finding, order a Family Maintenance Case Plan, and have the paternal and/or maternal great-grandmother remain in the home.

In October 2021, the juvenile court held a contested jurisdiction and disposition hearing. The court made a true finding on the petition and declared K.P. a child described by section 300, subdivision (b). As to disposition, the court ordered that K.P. remain in the parents' custody with family maintenance services.

Mother and K.P. appealed. While the appeals were pending, the Agency requested judicial notice of an order from an April 21, 2022 family maintenance review hearing. At that hearing, the juvenile court found the conditions justifying jurisdiction no longer existed, and the parents had made substantial progress in alleviating or mitigating the reasons for the court's initial assumption of jurisdiction. The court then terminated jurisdiction.[3]

## DISCUSSION

The Agency contends that the appeals should be dismissed because the juvenile court terminated its jurisdiction, so there is no effective relief we can provide. Because Minor does not oppose the Agency's motion to dismiss, we grant the Agency's motion as to Minor's appeal and dismiss her appeal as moot. As to Mother's appeal, we agree with the Agency and dismiss it for the reasons discussed below.

---

[3] We grant the Agency's request for judicial notice of the April 2022 order. (Evid. Code, §§ 452, 459; see *In re N.S.* (2016) 245 Cal.App.4th 53, 57 (*N.S.*) [dependency counsel have a duty to raise "postappellate rulings . . . that affect whether the appellate court can or should proceed to the merits"].)

4

" 'An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief.' " (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498; *N.S.*, *supra*, 245 Cal.App.4th at p. 60 ["critical factor" is whether effective relief can be provided]; *N.S.* at p. 56 [courts have duty to decide actual controversies, not opine on moot questions].) "As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot. [Citation.] However, dismissal for mootness in such circumstances is not automatic, but 'must be decided on a case-by-case basis.' " (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.)

Here, the juvenile court's order terminated jurisdiction and found that the parents had made substantial progress in alleviating the reasons for the court's initial assumption of jurisdiction. We conclude there is no effective relief we could grant Mother regarding the jurisdictional finding and order. Mother's appeal is therefore moot, and dismissal is proper.

Mother's arguments to the contrary are unavailing. The crux of her position is that we should exercise our discretion to resolve a moot issue because " 'there is a likelihood of recurrence of the controversy between the same parties or others.' " (*N.S.*, *supra*, 245 Cal.App.4th at pp. 58–59.) But Mother does not show such a question exists here. (See *In re David B.* (2017) 12 Cal.App.5th 633, 654 [dismissing moot appeal; declining to address "fact-specific questions" as to whether jurisdictional finding was supported by substantial evidence].)

Mother's reliance on *In re J.A.* (2020) 47 Cal.App.5th 1036, 1050–1051 (*J.A.*) is not persuasive. There, the mother used edible marijuana to address her pregnancy symptoms and only after researching that it was a relatively

5

safe alternative. (*Id.* at p. 1047.) After her baby tested positive at birth for marijuana, the juvenile court found that the mother's two children were dependent under section 300, subdivision (b). While the mother's appeal was pending, the court dismissed the dependency proceedings. (*J.A.* at p. 1050.)

Although the mother's appeal in *J.A.* was arguably moot, we exercised our discretion to review the jurisdictional finding because we found that the issue was likely to recur in the future—specifically, that the children and family services agency might "feel free to continue to pursue jurisdiction in other cases where there is no evidence of substance *abuse,* and no evidence of substantial risk—only evidence that a child was born testing positive for marijuana." (*J.A., supra,* 47 Cal.App.5th at p. 1051.) We explained the law was clear that mere substance *use* is not sufficient for jurisdiction and that jurisdiction had to be based on substance *abuse,* but the law was unclear on when substance use reached the point of substance abuse. (*Id.* at p. 1046.)

In contrast to the substance use versus abuse grey area in *J.A.*—where there was no evidence of a substantial risk to the child—the present case here concerns a jurisdictional finding based upon a seven-month-old child's *serious, unexplained injuries.* As the Agency contends, that is hardly a novel or disputed jurisdictional theory. (Seiser & Kumli on Cal. Juvenile Courts Practice & Procedure (2021 ed.), Dependency Proceedings, [Seiser] § 2.110. [describing section 355.1 as "most often applied to situations of infants and very young children who have suffered the detrimental condition with no reasonable explanation by the parents or caregiver for how the injuries occurred and with no certainty as to who caused the injury"].) Thus, unlike *J.A.*, the case here does not pose a jurisdictional theory warranting the exercise of our jurisdiction.

To the extent Mother contends that we should still review the court's findings because they could somehow negatively impact future proceedings, we reject this argument as highly speculative. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1494–1495.) Mother does not identify any specific adverse legal or practical impacts of the jurisdictional finding. Nor do we. (Cf. *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431–1432 (juvenile court sustained jurisdictional findings as to father, gave mother custody, and terminated jurisdiction; father's appeal was not moot where, among other things, the "findings . . . had an adverse effect on his custody rights"); *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 (addressing jurisdictional ground that mother subjected minor to act of cruelty, where other ground was not challenged; summarily agreeing the ruling could potentially prejudice mother in future proceedings); *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (reaching jurisdictional finding that mother failed to protect children from risk of sexual abuse, which carried "particular stigma," and finding that she exposed them to physical abuse, which motivated a particular order and could impact later proceedings). Moreover, any finding of jurisdiction in a *future* dependency proceeding would need to be based on current conditions; the court's prior jurisdictional finding would not be sufficient to demonstrate current jurisdiction or current risk. (*In re I.A.*, at pp. 1494–1495.) Thus, we see no reason to review the court's findings based on such speculation.

For the previous reasons, we conclude the appeals are moot.

## DISPOSITION

The appeals are dismissed.

HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.